# Authority of the Special Counsel of the Merit Systems Protection Board to Litigate and Submit Legislation to Congress

Congress may constitutionally authorize the Special Counsel of the Merit Systems Protection Board to conduct any litigation in which he is interested, except litigation in which the Special Counsel's position would be adverse to that taken by the United States in the same litigation. Such opposition would place the President in the untenable position of speaking with conflicting voices in the same lawsuit. In addition, because the Special Counsel is an Executive Branch officer subject to the supervision and control of the President, a grant by Congress to the Special Counsel of authority to submit legislative proposals directly to Congress without prior review by the President would raise serious separation of powers concerns.

February 22, 1984

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL,
OFFICE OF LEGISLATIVE AFFAIRS

This responds to your request for our views regarding the legislative recommendations of the Special Counsel of the Merit Systems Protection Board to permit the Special Counsel to "litigate before the courts on its behalf on any matter in which the Special Counsel has previously been involved," and empowering the Special Counsel to "submit directly to Congress any legislative recommendations that the Special Counsel deems necessary to further enhance the ability of the office to perform its duties under law." You indicated in your submission that your Office and the Civil Division are preparing a letter opposing such a grant of litigating authority to the Special Counsel. With respect to the Special Counsel's desire to submit legislative recommendations directly to Congress, you indicated that although you have been advised that the Office of Management and Budget (OMB) has secured the agreement of the Special Counsel to conform to the OMB legislative clearance process, you seek our advice on the question whether Congress constitutionally may authorize the Special Counsel to submit legislation to Congress directly, without first securing the approval of OMB, the legislative clearance office for the Executive Branch.

As discussed further below, we conclude that, as a legal matter, Congress constitutionally may authorize the Special Counsel to conduct, or otherwise participate in, any litigation in which he is interested except litigation in which he would be taking a position that is adverse to that taken by the United States

30

in the same litigation; although, as you point out, there are numerous policy reasons for opposing such a grant of authority. In addition, we conclude that, because the Special Counsel is an Executive Branch officer subject to the supervision and control of the President, Congress may not grant him the authority to submit legislative proposals directly to Congress without prior review and clearance by the President, or other appropriate authority, without raising serious separation of powers concerns.

## I. Special Counsel as an Executive Officer

We will preface our responses to the specific questions raised in your memorandum by first reviewing the history of the Civil Service Reform Act of 1978, Pub. L. No. 95–454, 92 Stat. 1111, as it relates to the Special Counsel's status as an Executive Branch officer, including the concerns raised by the Department of Justice at the time of the Act's enactment.

The Civil Service Reform Act of 1978 was enacted to update, overhaul and make more efficient the federal civil service system by: (1) codifying merit system principles and subjecting employees who commit prohibited personnel practices to disciplinary action; (2) providing new protections for employees who disclose illegal or improper Government conduct; (3) establishing a new performance appraisal system and a new standard for dismissal based on unacceptable performance; (4) streamlining the processes for dismissing and disciplining federal employees; and (5) abolishing the Civil Service Commission and establishing in its stead the Office of Personnel Management within the Executive Branch, and an "independent Merit Systems Protection Board and Special Counsel to adjudicate employee appeals and protect the merit system." S. Rep. No. 969, 95th Cong., 2d Sess. 2 (1978). *See also* H.R. Rep. No. 1717, 95th Cong., 2d Sess. 1 (1978).

The Act established the Merit Systems Protection Board as a bipartisan body of three members, to be appointed by the President with the consent of the Senate, and removable "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. §§ 1201, 1202. The Board is authorized to hear and adjudicate all matters within its jurisdiction, to enforce its orders against any federal agency or employee, to stay certain agency personnel actions, and to conduct special studies relating to the civil service and other merit systems within the Executive Branch and to issue reports thereon to the President and the Congress. *Id.* § 1205(a). In addition, the Act provided for a Special Counsel to the Board, to be appointed by the President, with the consent of the Senate, for a term of five years, and removable by the President "only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1204. The Special Counsel's primary duties under the Act are to receive and investigate allegations of prohibited personnel practices, to participate in proceedings before the Board when such participation is warranted, and to submit an annual report to Congress on his activities, including "whatever recommendations for legislation or other action by Congress the Special Counsel may deem appropriate." *Id.* § 1206.

31

Although the legislative history of the Act suggests that Congress intended both the MSPB and the Special Counsel to be independent of Presidential supervision and control,[1] this Department advised both Congress and the President that the bill which ultimately was enacted contained several provisions which raised very serious constitutional concerns. Those concerns focused primarily on the Act's attempt to limit the President's power of removal over the Special Counsel, whom, in view of his primarily prosecutive functions, this Office determined to be an Executive officer. Similarly, in the Department's comments to OMB on the enrolled bill, we advised that Congress could not constitutionally limit the grounds for removal of the Special Counsel by the President. Thus, this Department has consistently taken the position, and we believe correctly, that although the Board may function as a quasi-adjudicative independent body, the Special Counsel is an Executive officer and as such is subject to the President's supervision and control. *See also* "Presidential Appointees — Removal Power," 2 Op. O.L.C. 120 (1978).

## II. Litigation Authority of the Special Counsel

Under current law, the Special Counsel's litigating authority is limited to "interven[ing as a matter of right] or otherwise participat[ing] in any proceeding before the Merit Systems Protection Board." 5 U.S.C. § 1206(i). We understand from your memorandum that the Special Counsel now seeks to expand this authority to permit him to "appear as counsel on behalf of any party in any civil action brought in connection with any function carried out by the Special Counsel pursuant to this title or any other provision of law and [to] initiate and prosecute on behalf of any party in any such case an appeal of the decision of any district court of the United States or the United States Claims Court in such case."[2] As you have indicated, this proposal would permit the Special Counsel to seek judicial review of final orders or decisions of the Merit Systems Protection Board, as well as to prosecute appeals of federal court decisions, arguably even in instances in which he was not a party to the proceedings before the Board.

As you are aware, this Administration, as a policy matter, has generally opposed any legislative proposal that would further erode the Attorney General's litigating authority under 28 U.S.C. §§ 516 & 519. This opposition, shared by previous Administrations, is grounded in the need for centralized control of all government litigation. Such control furthers a number of important policy goals, including the presentation of uniform positions on important legal issues, the selection of test cases that would produce results most favorable to governmental interests, more objective handling of cases by attorneys unaf-

---

[1] *See, e.g.,* S. Rep. No. 969, 95th Cong., 2d Sess. 28–29 (1978).

[2] This language is taken from the text of S. 1662, a bill reported by the Senate Committee on Government Affairs on July 21, 1983, to "amend title 5, United States Code, with respect to the authority of the Special Counsel of the Merit Systems Protection Board." Although you have advised us that the Special Counsel has submitted to the Committee an alternative to S. 1662, we believe that the comments in this memorandum will be equally applicable to the Special Counsel's alternate proposal.

fected by an agency's narrower concerns, and the facilitation of Presidential supervision over Executive Branch policies implicated in government litigation. *See generally* "The Attorney General's Role as Chief Litigator for the United States," 6 Op. O.L.C. 47 (1982). Thus, there are numerous policy grounds on which to oppose a grant of litigating authority to the Special Counsel.

With respect to the legal considerations relevant to the proposed legislation, an agency's authority to litigate independently of the Attorney General in any particular circumstance generally depends on whether such authority is vested by statute in the agency. However, when the agency asserting such authority is an Executive Branch agency, constitutional issues arise if Congress has simultaneously vested litigating authority over the case in either the Attorney General or another Executive Branch officer. Those issues involve the President's authority to exercise supervisory control over his subordinates so that he may properly discharge his constitutional obligation to "take care that the laws be faithfully executed," U.S. Const. art. II, § 3, and Congress' potential violation of the constitutional separation of powers by interfering with the President's exercise of that authority. *See Humphrey's Executor* v. *United States,* 295 U.S. 602 (1935); *Myers* v. *United States,* 272 U.S. 52 (1926).

Although the Special Counsel's legislative proposal defines his litigating authority so broadly as to provide no clear indication of the actual circumstances in which it could be exercised, we may assume that the Special Counsel would seek to initiate, or otherwise participate in, litigation in which both independent and Executive Branch agencies would be defending themselves against allegations of prohibited employment practices. In such circumstances, the litigating authority that would be vested in the Special Counsel pursuant to his proposal could not be construed constitutionally to place the President in the untenable position of speaking with two conflicting voices by both prosecuting and defending the same lawsuit. To permit otherwise would constitute an abdication by the President of his obligation to execute the laws faithfully, and would fall short of "that unitary and uniform execution of the laws which article 2 of the Constitution evidently contemplated in vesting general executive power in the President alone." *Myers* v. *United States,* 272 U.S. at 125.[3] Thus, in litigation challenging the personnel practices of independent agencies, there would be no constitutional impediment to the Special Counsel's exercise of statutorily vested litigating authority so long as the Attorney General or any other duly authorized Executive Branch officer[4] has not taken a position in the

---

[3] *See also* "Litigation Authority of the Equal Employment Opportunity Commission in Title VII Suits Against State and Local Governmental Entities," 7 Op. O.L.C. 57 (1983).

[4] Although the Attorney General is the chief legal officer for the United States, *see* 28 U.S.C §§ 516 & 519, there are circumstances in which other Executive Branch officers, subject to the supervision and control of the President, are authorized by statute to represent the United States in litigation *See, e.g.,* 29 U.S.C. § 663 (granting the Solicitor of Labor authority to bring actions under the Occupational Safety and Health Act of 1970, "subject to the direction and control of the Attorney General"); 49 U.S.C. § 1810(b) (granting the Secretary of Transportation authority to litigate imminent hazards under the Hazardous Materials Transportation Act, or upon his request the Attorney General shall do so); 28 U.S.C. § 2348 (granting certain Executive

Continued

litigation on behalf of the United States that would be inconsistent with what the Special Counsel seeks to present. In litigation involving Executive Branch agencies, the Special Counsel's litigating authority would necessarily be limited to the presentation of views which would not conflict with those presented on behalf of the agency.

Nor may Congress authorize the Special Counsel to do otherwise. To permit Congress to do so would vest an essentially executive function, performed by a subordinate of the President, outside of the President's control, and thereby undermine the President's authority to control subordinate officers and the affairs of the Executive Branch. In short, to allow Congress to vest simultaneously litigating authority over the same case in two or more subordinates of the President would constitute an unconstitutional interference by the Legislative Branch with Executive process, a clear violation of the separation of powers. *See Humphrey's Executor v. United States*, 295 U.S. at 629; *Myers v. United States*, 272 U.S. at 164.[5]

### III. Authority of the Special Counsel to Submit Legislative Proposals Directly to Congress

As noted in your submission, the Special Counsel has proposed legislation authorizing him to submit directly to Congress legislative recommendations that he "deems necessary to further enhance the ability of the office to perform its duties."[6] As discussed further below, we believe that such a statutory grant

---

[4] (. . . continued)
Branch agencies the authority to appear through their own counsel in proceedings to review orders, although the Attorney General "is responsible for and has control of the interests of the Government in all court proceedings under [the Act]."). *See generally Report of the Attorney General's Task Force on Litigating Authority* (Oct. 28, 1982).

[5] An additional impediment to the Special Counsel's exercise of litigating authority in litigation involving Executive Branch agencies is § 1–402 of Executive Order 12146, reprinted in 28 U.S.C. § 509 note, pursuant to which the President, in the exercise of his constitutional authority over his subordinates, has required Executive agencies "whose heads serve at the pleasure of the President" and which are unable to resolve legal disputes among themselves to "submit the dispute to the Attorney General *prior to proceeding in any court*" (emphasis added).

[6] The proposal outlined in S. 1662 contains a concurrent reporting requirement:

Each year, the Special Counsel shall prepare and submit to the President and, at the same time, to the appropriate committees of the Congress, a statement specifying estimates of expenditures and proposed appropriations for the Office of the Special Counsel for the fiscal year beginning on October 1 of the next succeeding calendar year after the calendar year in which the statement is submitted and the 4 fiscal years after that fiscal year.

          \*      \*      \*

Whenever the Special Counsel considers it appropriate to make recommendations for legislation relating to any function of the Special Counsel provided by this title in addition to the recommendations for legislation set forth in the latest annual report submitted pursuant to subsection (m) of [§ 1206], the Special Counsel shall submit the recommendations to the President and, at the same time, to each House of Congress.

Section 1206(m) requires the Special Counsel to submit an annual report to Congress on his activities, "including the number, types, and disposition of allegations of prohibited personnel practices filed with it, investigations conducted by it, and actions initiated by it before the Board, as well as a description of the recommendations and reports made by it to other agencies pursuant to this section and the actions taken by

Continued

34

of authority to an Executive Branch officer, if construed to require concurrent transmittals that would preclude Presidential review of the proposed legislative recommendations prior to their submission to Congress, would constitute an unconstitutional intrusion by the Legislative Branch into the President's exclusive domain of supervisory authority over subordinate officials in the performance of their executive functions.[7]

The separation of powers principle is rooted in the Constitution's division of the Government into three separate Branches and the assignment of specific functions thereto. Article II vests the whole of the executive power in the President, charging him, *inter alia,* to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. This means that the President must possess "exclusive and illimitable power" over his subordinates as they assist him in discharging his constitutional obligation to execute the laws faithfully, unencumbered by interference from the coordinate Branches:

> The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question. So much is implied in the very fact of the separation of the powers of these departments by the Constitution; and in the rule which recognizes their essential co-equality. The sound application of a principle that makes one master in his own house precludes him from imposing his control in the House of another who is master there.

---

[6] (. . . continued)

the agencies as a result of the reports or recommendations." In addition, the report "shall include whatever recommendations for legislation or other action by Congress the Special Counsel may deem appropriate."

Although the Department, to our knowledge, heretofore has not had occasion to construe this particular provision, we have construed similar provisions in the past to avoid impinging on the constitutional prerogatives of the Executive. *See, e.g.,* Statement of Attorney General Elliot Richardson (June 1973) (construing 5 U.S.C. § 2954, which requires Executive agencies to submit to the House or Senate Committees on Government Operations "any information requested of it relating to any matter within the jurisdiction of the committee," to grant to the pertinent committees access to only type of information that traditionally has been made available to Congress and that is not subject to valid claims of executive privilege); "Constitutionality of Statute Requiring Executive Agency to Report Directly to Congress," 6 Op. O.L.C. 632 (1982) (construing § 506(f) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L No. 97–248, 96 Stat. 324, 677, which requires the Administrator to transmit certain budget information and legislative recommendations directly to Congress concurrently with their transmission to the Secretary of Transportation, the President or OMB, to require that only "final" budget information and legislative recommendations be sent, *i.e.,* information that has been reviewed and approved by appropriate senior officials).

Thus, we would construe the Special Counsel's existing authority pursuant to § 1206(m) to require him to submit only such information and legislative recommendations as have been cleared for transmittal by OMB, or other appropriate reviewing authorities.

[7] Of course, if such legislation were enacted, we would avoid the constitutional issue if possible, *see United States* v. *Rumely,* 345 U.S. 41, 45 (1956), by construing it as we do § 1206(m), to authorize the Special Counsel to submit only "final" recommendations to Congress, *i.e.,* those recommendations which have been reviewed and approved by appropriate senior officials in the Executive Branch. *See also* 6 Op. O.L.C. 632, *supra.*

35

*Humphrey's Executor* v. *United States,* 295 U.S. at 629–30. Although the rigid separation of powers standard first articulated in *Humphrey's Executor* has been viewed as more flexible in subsequent decisions by the Court, in each subsequent articulation remains the core concern that the President retain effective control over all matters within the Executive Branch in order to discharge properly his constitutional obligation faithfully to execute the laws. In *Buckley* v. *Valeo,* 424 U.S. 1 (1976), the Court recognized that "a hermetic sealing off of the three branches of Government from one another would preclude the establishment of a Nation capable of governing itself effectively," but it emphasized that there was a "common ground in the recognition of the intent of the Framers that the powers of the three great branches of the National Government be largely separate from one another." 424 U.S. at 120–21. The Court further declared that it "has not hesitated to enforce the principle of separation of powers embodied in the Constitution when its application has proved necessary for the decision of cases or controversies properly before it." *Id.* at 123. Most recently, the Court stated in *Nixon* v. *Administrator of General Services,* 433 U.S. 425, 443 (1977), that congressional enactments may not interfere with the Executive process unless such interference is "justified by an overriding need to promote objectives within the constitutional authority of Congress." *See generally* 6 Op. O.L.C. 632, *supra.*

Under the above standards, we believe that to permit Congress to authorize or require an Executive Branch officer to submit budget information and legislative recommendations directly to Congress, prior to their being reviewed and cleared by the President or another appropriate reviewing official, would constitute precisely the kind of interference in the affairs of one Branch by a coordinate Branch which the separation of powers is intended to prevent.

The Special Counsel's proposal would severely impair the President's ability to perform his constitutional obligation to "recommend to [Congress'] Consideration such Measures as he shall judge necessary and expedient." U.S. Const. art. II, § 3. As the President's subordinate, the Special Counsel is obligated to make his recommendations to the President, so that the President, on behalf of the Executive Branch, may judge which are "necessary and expedient," and thus should not interdict the process by making individual recommendations directly to Congress. For Congress to require the Special Counsel to report to it directly without such review would constitute a grave interference with the President's performance of his constitutional obligation, as well as "irreparably damage, if not destroy, the normal exchange of views between agency heads and the President (through OMB) before budget submissions [and legislative recommendations] are finally approved." 6 Op. O.L.C. at 641.[8]

---

[8] In addition, such an interdiction regarding budget information would violate the process through which the President exercises his constitutional authority to supervise the affairs of the Executive Branch in the performance of his statutory obligation under 31 U.S.C. §§ 1104 *et seq.* to transmit an annual budget to Congress. The President has required all budget submissions to be reviewed by OMB, and OMB Circular No. A-10 requires that

the confidential nature of agency submissions, requests, recommendations, supporting materials
Continued

36

By contrast, the Special Counsel has not articulated an "overriding need [of Congress] to promote objectives within the constitutional authority of Congress," to justify such a significant intrusion into the Executive process and the President's ability to supervise and control his subordinates. *Nixon v. Administrator of General Services,* 433 U.S. at 443. Presumably, the "need" is a strong desire on the part of Congress to be able to evaluate the Special Counsel's performance of his functions and to seek the Special Counsel's assistance in developing legislation which would enhance his performance of those functions. However, in view of the fact that such information may be obtained from the Special Counsel after review by appropriate Executive Branch officials and be no less valuable to Congress, the "need" can scarcely be considered "overriding."

Although we do not know the precise formulation of this provision in the Special Counsel's "alternative" proposal, this Office has analyzed similar provisions in the past and has found that, if construed literally, they would unconstitutionally infringe the separation of powers. In 1977, the Office commented on a bill that would establish Offices of Inspectors General in various Executive Branch agencies, and require the Inspectors General to submit certain information directly to Congress without clearance or approval by appropriate authorities. We stated that the bill would

> make the Inspectors General subject to divided and possibly inconsistent obligations to the executive and legislative branches, in violation of the doctrine of separation of powers. In particular, the Inspector General's obligation to keep Congress fully and currently informed, taken with the mandatory requirement that he provide any additional information or documents requested by Congress, and the condition that his reports be transmitted to Congress without executive branch clearance or approval, are inconsistent with his status as an officer in the executive branch, reporting to and under the general supervision of the head of the agency. Article II vests that executive power of the United States in the President. This includes general administrative control over those executing the laws. *See Myers v. United States,* 272 U.S. 52, 163–164 (1926). The President's power of control extends to the entire executive branch, and includes the right to coordinate and supervise all replies and comments from the executive branch to Congress. *See Congress Construction Corp. v. United States,* 314 F.2d 527, 530 532 (Ct. Cl. 1963).

---

[8] (. . . continued)
and similar communications should be maintained, because these documents are an integral part of the decisionmaking process by which the President resolves budget issues and develops recommendations to the Congress . . Budgetary materials should not be disclosed in any form prior to transmittal by the President of the material to which it pertains. The head of each agency is responsible for preventing premature disclosures of this budgetary information.

"Inspector General Legislation," 1 Op. O.L.C. 16, 17 (1977). More recently, we advised that a provision requiring the Federal Aviation Administrator to transmit certain budget information and legislative recommendations directly to Congress at the same time that they are transmitted to the Secretary of Transportation, the President, or OMB would, if construed literally, unconstitutionally interfere with the Executive process and thereby violate the separation of powers. *See* 6 Op. O.L.C. 632, *supra*.

As we have concluded in the past, we now conclude that the Special Counsel's proposal, which would require an Executive Branch officer, the Special Counsel, to submit confidential or deliberative information directly to Congress without providing an opportunity for review by a superior Executive officer, would interfere unduly with the President's authority to supervise and control the affairs of the Executive Branch. Such legislation would effectively sever the Special Counsel from his superiors within the Executive Branch with respect to the areas of his responsibility on which he reports, and thereby make him an "independent agency reporting both to Congress and to the President." We believe that Congress' perceived "need" to receive legislative recommendations and other information directly from the Special Counsel without their first having been reviewed by his superiors within the Executive Branch cannot justify the infringement of the separation of powers principle that would necessarily result from such legislation.

## Conclusion

In conclusion, we believe that the Department should continue to oppose the grant of litigating authority to the Special Counsel on policy grounds, and to raise the constitutional grounds discussed above where appropriate. In addition, we believe that the submission of legislative recommendations and other information by the Special Counsel directly to Congress, without prior review by appropriate Executive Branch officials, would violate the constitutional separation of powers by interfering with the Executive's ability to supervise and control his subordinates in the performance of their executive functions. Accordingly, we believe that S. 1662, and the Special Counsel's "alternative" proposal, should be opposed, and that he should be advised that, as an Executive Branch officer, his direct submissions to Congress are unauthorized.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*